Culver, Phillip & Voorhees, of St. Joseph, Mo., for plaintiffs.

Charles M. Blackmar (of Meservey, Michaels, Blackmar, Newkirk & Eager), of Kansas City, Mo., for defendants.

## O'CONNOR et al. v. GREAT LAKES PIPE LINE CO. et al.

### No. 2077.

District Court, W. D. Missouri, St. Joseph Division.

March 16, 1932.

OTIS, District Judge.

This was an action brought by plaintiffs to recover damages in accordance with the terms of a written contract entered into between the plaintiffs and the defendant Great Lakes Pipe Line Company October 10, 1930. By the terms of the contract, offered in evidence as an exhibit by plaintiffs, and called a "right-of-way agreement," plaintiffs, who were the owners of a farm in Clinton county, Mo., granted to the defendant, in consideration of $1, "the right to lay, maintain, operate, relay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same on and over (certain lands described in the agreement)."

In addition to the granting clause as here set out, this right of way agreement contained the following provision: "All damages to

crops, surfaces, fences and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of fifty cents per rod for each rod or fraction thereof of land on these premises, across which said line is laid."

In their petition plaintiffs claimed, and at the trial recovered, damages to crops growing on the lands, to the surfaces of the land, and to fences thereon. They sought also to recover damages by reason of depreciation in the market value of the lands, damages alleged by them to have been suffered by reason of the easement granted to the defendant and by reason of the construction of the pipe line which had been laid across the lands. Plaintiffs were not permitted to go to the jury upon the last-mentioned element of damages claimed by them, and they assert that error was committed thereby, and for that error move for a new trial.

For the information of the reviewing court, I state briefly my reasons for refusing to submit the issue of depreciation in market value.

■ 1. It seems clear to me that depreciation in market value was not within the contemplation of the parties as an element of damages under the written right of way agreement upon which plaintiffs sue. From the association of the word "premises" with the words "crops, surfaces and fences" which precede the word "premises," from the fact that the damages for which provision is made is that which results "for and because of the *laying* of each line of pipe," it seems to me that only physical damages such as might be suffered by crops, surfaces, fences, and other things of a like nature, as buildings, growing trees, etc., were intended. Damages which resulted from the actual *laying* of a line of pipe were the only damages in contemplation. Certainly it was not intended by the parties that there should be included depreciation in the market value of the lands involved, a depreciation resulting, according to the plaintiffs' theory, not from the *laying* of a line of pipe, but from the possibility that the later *patrolling* of that line of pipe might result in the carrying of disease germs to cattle pasturing on the lands. Depreciation in market value on that account cannot be said to be a

depreciation resulting from the laying of a line of pipe. If there is any such depreciation, it results from an entirely different matter, to wit, from what might be done after the laying of a pipe in connection with its maintenance.

■ 2. The second reason on account of which I did not submit the issue of depreciation in market value is that that matter, as it was sought to be proved, was not within the allegations of the plaintiffs' petition. The plaintiffs' petition asks for damages in this connection, first, upon the theory that the granting of the easement (without regard to whether pipes were laid) depreciated the market value of the lands; and, second, upon the theory that the actual laying of the pipe line which was laid effected a depreciation in market value. Clearly plaintiffs could not have damages from the granting of the easement alone apart from the consideration named in the right of way agreement. They could have damages according to the terms of the agreement only on account of the pipe line which actually was laid. The theory, however, which they desired to submit to the jury is that they were entitled to damages, not for "the laying of said pipe line," as prayed in the petition, but by reason of matters incidental to the *maintenance* of the pipe line for which in the petition they did not pray damages.

3. The third reason which justified the refusal to submit the issue of damages resulting from depreciation in market value was the absence of any competent evidence bearing upon that subject. No witness offered by the plaintiffs knew of any lands across which pipe lines had been constructed which had been sold. No witness, therefore, qualified to testify upon the subject. It seemed to me it would be the rankest speculation for witnesses to give testimony that the market value of the lands in question would be depreciated in some definite amount by reason of the possibility that persons patrolling the defendants' pipe line might in the future carry to the lands some germs of disease and so affect the usefulness of the lands for stock-raising purposes. Such testimony, without some showing that the lands having pipe lines had been sold, would have been the purest guesswork.

The motion for a new trial is overruled. It is so ordered. Plaintiffs are allowed an exception to this order.